The present appeal raises two issues. The first relates to Cosmo's belief that the PTAB did not carry its burden of proving obviousness and that claims 1 through 3 of the 978 patent are valid and not obvious in view of the asserted prior art. I want to ask you a question about the Lin Chinese patent. Do you agree that that teaches a transparent insulator that fully encapsulates the LEDs and the wires? Your Honor, we do not agree with that. There is talk about a transparent package or encapsulation, but I think the expert testimony is consistent that it does not cover the bottom of the device. I was looking at the appendix at page 1135 and I thought I saw depicted there that there was a circle that fully surrounded and maybe I'm just misunderstanding it so maybe you can explain it to me. In particular figures 5 and 6. Yes, Your Honor. So I think if you look at figure 5, that shows the dome, if you will, just sitting on top of the wires. It doesn't go all the way around to the back of the wires. If you compare that to the picture of encapsulation which appears in the 978 patent, which can be found, I would refer the court to appendix 0035 and also appendix 0040. Can I just ask about that? I guess I'm looking at figure 5 and I guess on figure 6, same thing on 1135, and this is number 73 is the transparent insulator, I think. Yes, it is. Isn't that going all the way around? I don't believe it goes to the back of the device because the device is sitting on the coil and it doesn't show. And that's because the line is sitting on top of the coil. Exactly, Your Honor. Again, if you compare it to the way the drawing is shown. Yeah, but what would you do with figure 6? Well, figure 6, I think it's just kind of the same thing. It shows the two wires on top. It doesn't really give you an angle where you can show what happens to the dome. And so the fact that this is not circular but sort of ovate is just the shape of the thing. It's not a perspective drawing. Correct. So this is just a bubble sitting on top. Exactly, and I think both experts have testified that that's what it is. And the board didn't make any contrary findings? The board did not. Okay, thank you. If I can get back to claim construction, the parties in the board appear to agree that the plain and ordinary meaning of encapsulating applies, but we have a disagreement of what the plain and ordinary meaning is. So let me just ask you to focus on I guess what has been something of my focus. What the claim says has to be encapsulated is not the wires, but is rather the contact pad areas plus the LED. So why doesn't it make sense to read it the way the board did and not to insist on essentially reading it to be limited to what may be shown in figure six? Well, because I think figure six obviously is part of the specification and has to be read in the context to give meaning to the claim. Why would the claim not say encapsulating every pair of first and second conducting wires and the surface mounted light emitting component bonded thereto if your construction were right? Well, I guess it could have said that, but we all know that claims are sometimes written imperfectly. And I think you have to read the claims with figure six and figure one, which I think are pretty clear in showing what the encapsulating is about. The problem I'm having with your argument is that there's a line between reading a claim term in light of the specification and importing an embodiment from the specification into the claim. And I'm not exactly sure where you are on that line. I mean, you might be importing an embodiment into the claim by saying, look at figure one, look at figure six. And when I say encapsulating the LED in the contact areas, you have to interpret that to mean also encapsulating the wires because that's what's shown in my figure. I understand that, Your Honor. And I, of course, recognize that you can't import the limitations into the specification to create limitations of the claim. But I think in this case, there's really nothing else in the claim language or the specification that gives encapsulating any other meaning. The term does not appear more than, I think it's only twice, once in the claim and once in the specification. I don't think that I agree with your interpretation of encapsulating. But I think Judge Toronto hit on something important when he said, what is being encapsulated here? So I think the disagreement might be there. And I understand that. And I think, again, looking at the drawings, which are really the only thing we have to go on as to what is being encapsulated, show that the encapsulation includes the wires in the entire system. It is the dome that is shown there, the complete dome. And I don't think there's anything in the claim language which says that cannot be part of the construction. No, but the board's broadest reasonable interpretation simply says it needn't be, not that it can't be. And that as long as what you are doing is completing a capsule that makes the particular things, the contact pad area and the LED, completely covered, but not necessarily all covered by the transparent material, then that's sufficient. But I respectfully disagree with the board, Your Honor, because what the claim says, it's the transparent package that is doing the encapsulating. And so if there are other parts that complete the encapsulation, then that, I think, is not what the claim is saying. There was a prosecution history change, right, in reaction to a prior art reference called Marcus, if I remember right. I don't recall either in the prosecution history or in your submission to the board, or maybe even here, a development of an explanation for what that change of language was supposed to signify. A change from enclosing to encapsulating, something either that alone or maybe slightly more change, I don't remember. I think the change was only from enclosing to encapsulating, and the board offers no, or the examiner offered no explanation as to why it did that. But I think it's reasonable to conclude that that was done to align the claim language with what the actual specification discloses. Does the specification use the word encapsulate? I don't recall. Not really. It appears once, but not in terms of the way the device works. The page in the prosecution history on this, which I think is 971, I guess, gives no particular explanation whether this has to do with Marcus or has to do with written description support or anything else, right? Correct. It was the examiner's amendment that accompanied the allowance, and no explanation is given. But I think we would agree that it has to have meaning. I mean, there is something about this. The examiner clearly intended encapsulate to mean something different than enclose because it made that change. Encapsulate seems to me, in common parlance, does mean something different from enclose, right? I would agree, Your Honor. But it doesn't necessarily mean that it has to be wholly enclosed by the same subset. Let me give you an example that comes to mind. I mean, you would say a corral encloses an area populated by horses, even though there's nothing on the top of the corral. But you would say that the barn encapsulates, farmhand wouldn't use that word, but you could use it, the area populated by the horses. Even if the barn has an earthen floor, wouldn't you agree that that barn encapsulates the horses? I would agree in that example, yes. And why isn't that this case? Because I think in this case, we have to look at what the specification says encapsulation means. But you were just telling us that the specification doesn't really say very much about encapsulation. Correct. The word doesn't appear much, but the drawings, which are part of the specification, I think show clearly what the inventor intended the encapsulation to be in this case. And that, you think, is enough to show that that is consistent with the broadest reasonable interpretation? We do, Your Honor. And if I can just sort of amplify in your barn example, if we talked about the barn enclosure including the floors, that would include the floors. Well, but are you saying that if the barn with an earthen floor is not encapsulating, but the barn with a wooden floor is? No, what I'm saying is the barn itself, the barn structure not including the floor, may be encapsulating. And the reason I'm pointing this out is because what the claim says is that the transparent package is doing the encapsulating. So if we're talking about the wooden structure, that may not be encapsulating. But if you had a wooden structure, to take your example, there was a wooden floor and the claim talked about a wooden floor encapsulating, I think that would be different. That would be similar to this claim because we have to read the claim in its entirety. And it's not just encapsulating, it's that the transparent package is encapsulating. And that's, I think, the way this has to be read. You're about at your dividing mark, but it's up to you how you want to use the three minutes. Thank you. Mr. Washer. Thank you, Your Honor. Your Honor, you're exactly right. Cosmo is trying to incorporate a limitation in the claim language that's just not there. To begin with, the drawings, I put very much emphasis on figure six of the 978 patent. Now, in patent prosecution, drawings aren't always required for patent application. A drawing is usually required if it will aid in the understanding of the language of the claims. And this court even put significant weight on the language that the inventors used in the Phillips v. AWH case. It's all about the lexicography, what language did they use. I don't really see anything in it that says that a drawing is going to be determinative of what the claim scope is. If I could direct the court's attention to, we could begin with the patent application that was filed. Appendix page 1002, you discussed a few moments ago, shows that the inventor, when they filed for the 978 patent application, had transparent packages and closing as dependent claim five. So what they saw as the invention was the broadest description of it in independent claim one, and transparent packages was something that was added in a dependent claim. Now, it wasn't until it was rejected in the first office action, and they filed their reply incorporating that transparent packages into claim one in order to add a limitation to overcome the prior art that was cited. And they still stuck with the enclosing language, this is correct. But the examiner interview summary tells us that the examiner, for whatever reason during that time, decided that he liked encapsulating better than he did enclosing. There's no way of knowing. It's equally as valid for us to assume... Is the interview summary different from this examiner's amendment? The interview summary is appendix page 974. And his substance of interview describing the general nature of what was discussed, it really doesn't give much detail at all. There's no way of getting into the examiner's head reading this as to what he was thinking. Now, it could very well have been that the examiner just liked encapsulating as a term of art as opposed to enclosing. Because if the examiner is an engineer, former engineer or whatever, he may like that term better. In my practice, my patent prosecution, a lot of times examiners will do that. Do I have evidence that this is the case? No. But it's equally, we could assume that that could be it as well. Encapsulating does carry with it some greater suggestion of coverage, does it not? I mean, to take the Corral and Barn example. Yes, I think it's... But like I say, as far as electronics, assembly technology and all that is concerned, it's a term of art. It's something that's more consistently used as opposed to enclosing. What about the fact that the patent itself uses the word enclosing, or the claim itself, with respect to the insulating layer on the first conducting wire? I believe it's the third line in the claim. It uses enclosing in connection with the different elements. So, I mean, I'm not sure what to infer from that, but it doesn't seem to me to suggest that the examiner thought this word was one that ought not be in a claim or is not one that one of ordinary skilled art would understand. Well... Yes. So you're looking at appendix page 44, the patent claims? Yes, I'm looking at claim one. And line, I guess it's about line four in column six. Column six. It says insulating layer enclosing the first conductor. Am I... First insulating layer enclosing the first conductor. And, I mean, might one take from that, since this is a wire in which the rest of the claim is saying they're actually going to be exposed portions, that enclosing is actually less covering, and by switching to encapsulating for the transparent material at the end, maybe the examiner was thinking I actually want to be more in covering, more coverage than merely enclosing, because we know that merely enclosing needn't be complete. And you're correct, Your Honor. We don't know. We don't have evidence in the record that says that that's the case, but it very well could have been that he was trying to differentiate that from that language that was used earlier in the claim. So, encapsulating as a term of art, both of the experts that are involved in this case agree that the surface mount device technology, the methods, the materials, and all that, was all well-known decades prior to the 978 patent invention. So these terms are well-known, well-understood. This isn't the first time that it appeared. And Judge Sorrento, as you pointed out, that the language is encapsulating every pair of first and second contact bed areas, and the surface mount light emitting component bonded there, too. So the transparent package really does just that. It encloses those two different portions of that invention. That's the scope of the invention that the applicant reported. The description in the detailed description section, at the bottom of column four of the patent and extending through column five, furthers that discussion that the language used, that a layer of transparent package is further applied to an outer side of every pair of first and second contact pad areas, an outer side, and the surface mount light emitting component bonded there, too. They never do say that it covers the insulated wires themselves. It's just those. And the board made something, at least, which caught my eye out of that word, or the phrase, outer side. Outer side. Suggesting, and at least I think the board took away from it, a suggestion that the sides already covered by something else, like the side of the LED that was covered by the contact pad, or the contact pad underside that was covered by the insulated wire, that those were not being contemplated as necessarily to be themselves surrounded by transparent material. Yes, you're correct, Your Honor. That's exactly what we take away from the board's decision as well. The board documents that, that it looked at that, just as you stated, that it doesn't state that it has to also cover the insulation that's on the bottom of the wires. Now, the benefits that the patent goes on to describe is that this prevents the surface mount light emitting component and the exposed conductors of the conducting wires from electrically contacting external environment and resume the partially ground off first and second insulating layers of the first and second conducting wires. Again, that's readily accomplished by applying the epoxy resin on top, it flows over, it covers down to the edge of the opening for the contact pad areas, but doesn't necessarily have to go beneath the insulating layer of the wires. That's not part of the description here. They're reading this into it based solely on a shape that was chosen to depict the transparent package in figure six of the patent. There's no support for that in the written section of this description, that that is the embodiment that must be read into the claims. And to further that, even the patent applicant did not wish to limit to exactly the embodiments that were disclosed in this. If you look at that final paragraph at the bottom of page five, still on appendix page 44, it discusses that it's been described with reference to the preferred embodiments, but a variety of modifications and changes may be needed out departing from the scope. That's kind of a standard thing. So they're leaving it open for other embodiments, not just what's specified here. This was just a preferred embodiment. So I think it's wrong for Cosmo to try to read limitations into the claims in this regard. They're unreasonably narrowing the scope of these claims in an effort to save the patent. Any questions? If I could just address the rationale that was provided. For the Patent Trial Appeal Board, this court and NRA Invasive make clear that there are two things that the board has to provide. They have to make necessary findings supported by evidence and examine the relevant data and articulate a rational connection between the facts and the choices made. That's very clear. But the question arises to what level of detail is necessary from the board. At Personal Web Technologies v. Apple, the court clarified that the amount of explanation required really depends solely on the context so that a brief explanation might suffice if it's simple technology. Conversely, if it's complicated technology, then you're going to need additional detail. But simple technology, you might need just a little bit of detail. Turning back to NRA Invasive, the court also stated that the board doesn't have to provide a perfect explanation, but the court can uphold it if the court can reasonably discern that the board followed a proper path, even if it's not perfectly clear. I would offer that the board did provide sufficient detail because we're not talking about extremely complex technology here. We've presented three solid prior art references that aren't being contested that feature the same objectives as the 978 patent that demonstrate that all the technologies were well known in practice, well understood. The experts agree that all of these surface-mounted device technology methods, materials, were all well within the skill of one of ordinary skill and that were understood decades prior to these. This is not complicated technology. The board documented that it would have been a simple substitution. We provided pretty much all of the rationale that KSR provides to render an invention obvious under the KSR rationale. The board chose one and stuck with that simple substitution. They could have chosen others, but I think that they did provide sufficient detail to allow the court to review what it is that got them along that path. If you have any questions, nothing further. Thank you for your argument. Thank you. Mr. Sloss. Thank you, Your Honor. So what do you make of the top of, is it column five with the reference to outer side? Yes, outer side. What I make of... I mean, since you couldn't possibly put a transparent material on sort of on the actual interior of the thing, it must mean the otherwise not covered side. Well, again, the top of column five and the bottom of column four begin with a reference to figure six and figure one. What these words are explaining is what is shown in figure six and figure one. That's clear, I think, from the way the columns are set up. The paragraph at the bottom of page four begins, figure six is in a large cross sectional view taken along line 6-6 of figure one. Please refer to figures one and six at the same time. And looking at those figures, I think it's clear what is intended by the language that appears at the top of column five, that the encapsulation is of everything. Well, in the figure six itself, and I don't know if anything should be made of this, but there's actually a space between the two conducting wires, so that if you wanted to... The contact pad is the white rectangle on top. Part of the outer side of that contact pad is actually tucked between the two conducting wires underneath. So in that kind of example, you would need to get some transparent material under there, which you might not if the conducting wires and their insulation flush against each other. Right, I'm not sure where the space is, but... Underneath, between the two wires in the middle. No, I understand. I'm not sure. Is that called a space? Oh, I don't know. It's not labeled. Yeah, I mean, I don't think that's a space. I think it's sitting directly on top of the conducting wires with the adhesive. I'm sorry. There's like a little... The contact pad is like a little bridge between two gears, and you could drive through there if you wanted to. That's what I'm looking at. In figure six? Yeah, the conducting wires are like this, right? See, my nose fits between those two things. Oh, I see what you're saying. Yeah, well, that shows that the encapsulating material fills in between those. Right, so the description of outer side in the context of figure six would actually require some of this transparent material to go on the underside, which would be an outer side of a piece of the contact pad. Correct. But the description, right, is what is contemplated is applying it to an outer side of every paired first and second contact pad area, which you wouldn't need the transparent material to go all the way around the insulated portion of the wires. You may not need it, but I think what the figure shows is that's what the inventor intended. That's the way the inventor intended for it to work. Thank you very much. Thanks to both counsel and the cases submitted.